IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD R. SCOTT, SR., | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 08-1663 |
| | : | |
| DAVID D. DIGUGLIELMO, et al., | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

May  1 , 2009                                                                                              Anita B. Brody, J.

**I.  Introduction**

      On December 1, 2008, Plaintiff Bernard Scott ("Scott") filed an amended complaint against Defendants Jeffrey Beard, David DiGuglielmo, John Murray, and A. Scott Williamson (collectively, "Defendants") in their official capacities.  Jeffrey Beard ("Beard") is the Secretary of the Department of Corrections, David DiGuglielmo ("DiGuglielmo") is the Superintendent of the State Correctional Institution at Graterford, Pennsylvania ("SCI Graterford"), and John Murray ("Murray) and A. Scott Williamson ("Williamson") are Deputy Superintendents at SCI Graterford.  Scott brings three counts against the Defendants: 1) denial of due process in violation of the Fourteenth Amendment; 2) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; and 3) retaliation in violation of the First and Fourteenth Amendments.  Scott seeks declaratory and injunctive relief to remedy alleged violations of his constitutional rights while incarcerated at SCI Graterford.  Specifically, Scott asks that the Court declare that he has a serious and continuing mental health condition for which he has not

1

received adequate treatment and that the Court order Defendants to change Scott's prison records to reflect such. On December 19, 2008, Defendants moved to dismiss Scott's complaint on the basis that 1) Scott lacks standing to bring the suit; 2) Scott's claims are moot; 3) Defendants lack authority to provide the requested relief; 4) Scott fails to state a claims upon which relief may be granted; and 5) the Younger doctrine requires abstention. In the alternative, Defendants ask that the case be transferred to the Western District of Pennsylvania under the doctrine of *forum non conveniens*, that the jury trial demand be stricken because only equitable relief is requested, and that Scott provide a more definite statement. On March 27, 2009, Defendants filed a Motion for a More Definite Statement in the Alternative.

## II. Background[1]

In 1996, Scott was convicted, sentenced to imprisonment, and taken into the custody of the Department of Corrections. As part of his sentence, the sentencing court ordered that Scott receive psychiatric care in prison; this was incorporated into his correctional plan. In 1997, Scott was sent to SCI Green and was placed in a Special Needs Unit ("SNU") where he could receive specialized psychiatric treatment, medication, and support. Scott received daily psychiatric treatment and was a model prisoner. In 2000, as a reward for this exemplary behavior, Scott was transferred to SCI Mahoney, a facility located closer to his family. On December 27, 2002, Scott was taken to the hospital for medical treatment and was falsely accused of trying to escape. Upon his return to SCI Mahoney, Scott was placed in the Restrictive Housing Unit ("RHU"). Prior to being placed in the RHU, Scott was not provided a hearing before the Program Review

---

[1] Unless otherwise noted, all facts in this section were taken from Scott's amended complaint (Doc. # 28). All facts were considered in the light most favorable to Scott, the non-moving party.

Committee in accordance with DOC policy and procedures. On January 3, 2002, Scott was assaulted by staff members and another inmate and then drugged by staff members. On another occasion, Scott was placed in a steel cage with an inmate who was on death row and correctional officers allowed this inmate to attack Scott. On March 16, 2004, Scott was again attacked by correctional officers. Scott suffered numerous injuries as a result of these attacks. Additionally, while in the RHU at SCI Mahoney, Scott was denied psychiatric treatment.

On April 19, 2004, Scott was transferred back to SCI Green and was immediately placed in the RHU. Scott continued to suffer abuse at SCI Green, including being denied clothing, food, water, and psychiatric treatment. While at SCI Green, Scott was transferred to the Special Management Unit ("SMU"), a unit for inmates who present a safety concern. On June 2, 2006, after two years in the SMU at SCI Green, Scott was again transferred to SCI Graterford so that he could be placed in a Secured Special Needs Unit ("SSNU"). The SSNU is intended for inmates with behavioral problems who need specialized treatment and are unable to function in typical restrictive housing units. On June 7, 2006, however, Scott met with a Management Review Team and was told that the SSNU at SCI Graterford would not be operational until January 2007. Scott was instead placed in the RHU and was physically and mentally abused by staff, and suffered denial of psychiatric treatment, food, water, clothing, bedding, recreation, and use of the law library. On May 23, 2007, Scott was placed in the SSNU where he received psychiatric treatment and was again a model inmate.

In September 2007, Scott refused to be an institutional informer and reported being sexually assaulted by an institutional psychologist. In retaliation for this, Scott was placed back in the RHU. Scott was placed in a behavior modification cell, which is designed to prevent any

3

human contact with the inmate. Scott was again physically and mentally abused by correctional staff. On August 8, 2008, Scott was transferred to SCI Cresson and housed in the SSNU where he was also placed in a behavior modification cell.

### III. Standard of Review and Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007). Under Federal Rule of Civil Procedure 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted." In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the well-pleaded allegations of the complaint and draw all reasonable inferences in the plaintiff's favor. Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotations omitted). Scott's claims are brought under 42 U.S.C. § 1983, therefore this Court has jurisdiction under 28 U.S.C. § 1331.

### IV. Discussion

#### A. Standing

Article III of the Constitution limits the power of federal courts to resolve cases or controversies. "A declaratory judgment or injunction can issue only when the constitutional

4

standing requirements of a 'case' or 'controversy' are met." St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000). Requests for declaratory relief cannot hinge solely on hypothetical or contingent questions. Id. (citations omitted). The case or controversy requirement is met when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (citations omitted). Courts ensure that the case or controversy requirement is met by following several justiciability doctrines, including standing, ripeness, mootness, the political question doctrine, and the prohibition on advisory opinions. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 143 (3d Cir. 2009).

The doctrine of standing helps identify which disputes are justiciable under the case or controversy requirement. "As an incident to the elaboration of this bedrock [case or controversy] requirement, this Court has always required that a litigant have "standing" to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). At a minimum, three elements are needed to establish constitutional standing under Article III: 1) injury-in-fact, 2) causation (or traceability), and 3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

Defendants do not contest that Scott has pled injury-in-fact and causation. To establish redressability, Scott must show a "substantial likelihood that the requested relief will remedy the alleged injury in fact." Toll Bros., 555 F.3d at 143. Mere speculation that the requested relief would remedy the alleged injury is not sufficient to establish standing. Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973). The court must ask, "[i]s the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?" Allen v. Wright, 468 U.S. 737, 752

5

(1984).

The relief Scott seeks is 1) a declaration from the Court that Scott has a serious and continuing mental health condition and that he has not, since December 27, 2002, been receiving adequate treatment for his serious medical needs; 2) an injunction ordering Defendants to make corrections to Scott's prison charts to reflect the fact that Scott continues to suffer from a serious mental health condition and that Scott has not been receiving adequate treatment for this condition since December 27, 2002; 3) reasonable attorney's fees and costs; and 4) any additional relief the Court deems just, proper, and equitable.

**1. Count One: Denial of Due Process in violation of the Fourteenth Amendment**

Scott asserts that his placement in the RHU at SCI Mahoney, and subsequent RHU placements since December 27, 2002, without receiving a hearing, deprived him of a liberty interest without due process of law as required by the Fourteenth Amendment. Taking all facts in Scott's favor, the requested relief, if granted, would not redress Scott's injury alleged in Count One. Scott contends that his injury would be addressed by a favorable decision if he "succeeds in forcing the defendants to provide him with a hearing to prove his placement is warranted." (Pl.'s Resp. to Defs.' Mot. to Dismiss, 7.) Granting a declaration or injunction regarding Scott's mental health would in no way "force" the Defendants to provide Scott a due process hearing nor would it make it substantially more likely that Defendants would provide Scott with a hearing in the future. It is purely speculative that if the Court granted the requested injunction and declaratory relief Defendants would provide Scott with a hearing before transferring him in the future. The requested declarative relief is not likely to change Scott's current placement, as he is currently housed in a SSNU. Scott has not shown that there is a substantial likelihood that

granting the requested relief would remedy the alleged deprivation of Scott's due process rights or prevent future deprivations. Therefore, Scott does not have standing to bring Count One.

**2. Count Two: Cruel and Unusual Punishment in violation of the Eighth Amendment**

Scott's alleged injury under Count Two is a denial of proper medical and psychiatric care, which continues to present. There is a substantial likelihood that this injury would be addressed by the requested relief; therefore, Scott has standing to bring this claim.

**3. Count Three: Retaliation in Violation of the First Amendment**

Scott alleges that he was transferred to various different correctional institutions and denied food, clothing, water, and mail in retaliation for exercising his First Amendment rights. If the requested relief were to be granted, it would in no way redress these alleged deprivations. Scott has not shown a substantial likelihood that a declaration and injunction regarding Scott's prison records and mental health treatment would redress this alleged retaliation, nor prevent it from occurring in the future. At best it is merely speculative that an injunction altering Scott's records and a declaration of his mental illness would prevent prison officials from retaliating against Scott. Scott suggests that redressability is met because the Court has discretion to require adequate paperwork to accompany any future transfers and/or enjoin Defendant Beard from transferring plaintiff in retaliation for exercising his rights. An injunction containing overbroad language that does nothing more than require an official to obey the law is impermissible. Belitskus v. Pizzingrilli, 343 F.3d 632, 650 (3d Cir. 2003). Additionally, the alleged injury must be redressable by the "requested relief" in order for the plaintiff to have standing. Toll Bros., 555 F.3d at 143. Merely asking that the Court grant any additional relief it deems "just, proper and equitable" is not sufficient to meet the redressability prong of standing. Therefore, Scott

does not have standing to bring Count Three.

**4. Claims against DiGuglielmo, Murray and Williamson**

If the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants. Okpalobi v. Foster, 244 F.3d 405, 427 (5th Cir. 2001). See also Snyder v. Millersville Univ., No. 07-1660, 2008 WL 5093140, at *12 (E.D.Pa. Dec. 3, 2008) ("In proceeding instead only against individuals who do not have the authority to afford her the desired relief, however, Plaintiff's request for a mandatory injunction necessarily fails."); Williams v. Doyle, 494 F.Supp.2d 1019, 1024 (W.D.Wis.2007) ("[A] claim for injunctive relief can stand only against someone who has the authority to grant it."). DiGuglielmo, Murray, and Williamson are all officials at SCI Graterford. Scott asserts that these three defendants "ensure that the maintenance of facilities, training of employees, and the overall operations of SCI Graterford comply with DOC policies and regulations." (Compl. 2). Scott is currently housed at SCI Cresson. DiGuglielmo, Murray, and Williamson no longer have authority over Scott or his prison records, as he is no longer housed in their facility. Therefore, even though DiGuglielmo, Murray, and Williamson may bear responsibility for Scott's alleged injuries, they have no way of complying with the requested injunction, if granted. All claims against DiGuglielmo, Murray, and Williamson are therefore dismissed.

**B. Venue**

Defendants move to transfer this case to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). According to 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district may transfer any civil action to any other district or

division where it might have been brought." The moving party bears the burden of establishing the need for transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations omitted).

A court deciding whether to transfer a case based on *forum non conveniens* must balance the "private and public interests protected by the language of § 1404(a)." Jumara, 55 F.3d at 879. "[T]here is no definitive formula or list of the factors to consider." Id. Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses- but only to the extent the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records.

Id. (internal citations omitted). See also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two for a resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879-80. See also Gulf, 330 U.S. at 508-09. "A defendant seeking dismissal on *forum non conveniens* grounds must show that the balance of the public and private factors 'tips decidedly in favor of trial in the foreign forum.'" Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 192 (3d Cir. 2008).

9

Defendants ask to transfer this case because Scott is currently housed in the Western District of Pennsylvania and all of his records and treatment providers are also in that district. Scott's choice of forum, however, is the Eastern District of Pennsylvania and "should not be lightly disturbed," Shutte, 431 F.2d at 25.  Additionally, the claims in this case arose from substantial events that occurred in this district while Scott was incarcerated at SCI Graterford. The private interest factors favor allowing Scott his choice of forum and a denial of transfer pursuant to *forum non conveniens*.

The public interest factors also strongly favor a denial of transfer pursuant to *forum non conveniens*.  A judgment rendered here is equally as enforceable as one rendered by the Western District of Pennsylvania.  There is no indication that litigating this case here would result in any more administrative difficulty or congestion than litigating it in the Western District of Pennsylvania.   Public policy and the Court's local interests weigh heavily against transfer because this Court has a significant interest in adjudicating a suit concerning alleged violations of constitutional rights occurring within this district. Accordingly, the public interest factors favor retention of this suit in the Eastern District of Pennsylvania.

Defendants have not met their burden of showing that the balance of private and public factors tip decidedly in favor of transferring this case.  Therefore, I deny Defendants' motion to transfer based on *forum non conveniens*.

**C.  Jury Trial**

There is no right to a jury trial under the Seventh Amendment if the relief sought is solely equitable, as in the case at hand.  Cox v. Keystone Carbon Co., 861 F.2d 390, 393 (3d Cir. 1988). Therefore, Defendants' request to strike Scott's jury demand is granted.

                                                        s/Anita B. Brody

                                                    ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                  Copies **MAILED** on _____ to: